# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 06-371V
### (Not For Publication)

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                                *
FRANCIA HIRMIZ and                              *
PETER HIRMIZ, as best                           *
friends of their daughter, J.H.,                *         Filed: August 29, 2017
                                                *
                            Petitioners,        *
                                                *         Decision on Attorneys'
                                                *         Fees and Costs
            v.                                  *
                                                *
SECRETARY OF HEALTH AND                         *
HUMAN SERVICES                                  *
                                                *
                            Respondent.         *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

*John F. McHugh, New York, NY, for Petitioners.*
*Linda Renzi, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION AWARDING ATTORNEYS' FEES AND COSTS

**HASTINGS,** *Special Master*.

In this case under the National Vaccine Injury Compensation Program (hereinafter "the Program"[1]), Petitioners seek, pursuant to 42 U.S.C. § 300aa-15(e)(1), an award for attorneys' fees and other costs incurred in attempting to obtain Program compensation. After careful consideration, I have determined to grant the request in substantial part, and deny it in part.

---

[1] The applicable statutory provisions defining the Program are found at 42 U.S.C. § 300aa-10 *et seq.* (2012 ed.). Hereinafter, for ease of citation, all "§" references will be to 42 U.S.C. (2012 ed.). The statutory provisions defining the Program are also sometimes referred to as the "Vaccine Act."

# I

## BACKGROUND LAW CONCERNING ATTORNEYS' FEES AND COSTS AWARDS

Special masters have the authority to award "reasonable" attorneys' fees and litigation costs in Vaccine Act cases. §300aa–15(e)(1). This is true even when a petitioner is unsuccessful on the merits of the case -- in such cases, a special master "may" award fees, if the petition was filed in good faith and with a reasonable basis. *Id.*[2] "The determination of the amount of reasonable attorneys' fees is within the special master's discretion." *Saxton v. HHS,* 3 F.3d 1517, 1520 (Fed. Cir. 1993); *see also Shaw v. HHS,* 609 F.3d 1372, 1377 (Fed. Cir. 2010).

Further, as to all aspects of a claim for attorneys' fees and costs, the burden is on the *petitioner* to demonstrate that the attorneys' fees claimed are "reasonable." *Sabella v. HHS,* 86 Fed. Cl. 201, 215 (2009); *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983); *Rupert v. HHS,* 52 Fed. Cl. 684, 686 (2002); *Wilcox v. HHS,* No. 90–991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997). The petitioner's burden of proof to demonstrate "reasonableness" applies equally to *costs* as well as attorneys' fees. *Perreira v. HHS,* 27 Fed. Cl. 29, 34 (1992), *aff'd,* 33 F.3d 1375 (Fed. Cir. 1994).

One test of the "reasonableness" of a fee or cost item is whether a hypothetical petitioner, who had to use his own resources to pay his attorney for Vaccine Act representation, would be willing to pay for such expenditure. *Riggins v. HHS,* No. 99–382V, 2009 WL 3319818, at *3 (Fed. Cl. Spec. Mstr. June 15, 2009), *aff'd by unpublished order* (Fed. Cl. Dec. 10, 2009), *aff'd,* 406 Fed. App'x. 479 (Fed. Cir. 2011); *Sabella v. HHS,* No. 02–1627V, 2008 WL 4426040, at *28 (Fed. Cl. Spec. Mstr. Aug. 29, 2008), *aff'd in part and rev'd in part,* 86 Fed. Cl. 201 (2009). In this regard, the United States Court of Appeals for the Federal Circuit has noted that:

> [i]n the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*Saxton*, 3 F.3d at 1521 (emphasis in original) (quoting *Hensley*, 461 U.S. at 433–34). Therefore, in assessing the number of hours reasonably expended by an attorney, the court must exclude those "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434; *see also Riggins*, 2009 WL 3319818, at *4.

The Federal Circuit has also made clear that special masters may rely on their prior experience in making reasonable fee determinations, without conducting a line-by-line analysis of the fee bill, and are not required to rely on specific objections raised by respondent. *See Saxton*, 3 F.3d at 1521; *Sabella*, 86 Fed. Cl. 201, 209 (2009); *see also Wasson v. HHS,* 24 Cl. Ct.

---

[2] In this case, I find that the claim was initiated in good faith and with a reasonable basis. However, as will be explained below, I find that Mr. McHugh's decision to appeal this case beyond the first level of review was *not* reasonable.

482, 484, 486 (1991), *aff'd*, 988 F.2d 131 (Fed. Cir. 1993) (holding that, in determining a reasonable number of hours expended in any given case, a special master may rely on her experience with the Vaccine Act and its attorneys, without basing his decision on a line-by-line examination of the fee application).  A unanimous Supreme Court has articulated a similar holding:

> We emphasize, as we have before, that the determination of fees "should not result in a second major litigation." The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award."  But trial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.  And appellate courts must give substantial deference to these determinations, in light of "the district court's superior understanding of the litigation."  We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it.

*Fox v. Vice*, 563 U.S. 826, 838 (2011) (internal citations omitted).


# II

# PROCEDURAL BACKGROUND


Petitioners, Francia and Peter Hirmiz, filed this petition on May 8, 2006, alleging that several vaccinations injured their daughter, J.H.  The Secretary of Health and Human Services ("Respondent") opposed the claim. The petition was assigned to Special Master Richard Abell, who conducted various proceedings, including an evidentiary hearing that was held on January 14, 2010.  On March 26, 2010, Special Master Abell issued a document entitled "Findings of Fact," in which he resolved issues concerning what symptoms Jessica displayed, and when. The case was then reassigned to my docket on March 29, 2010, due to the impending retirement of Special Master Abell.

On December 13, 2010, Petitioners filed an "Interim Fees Application," seeking an award of "interim fees" for their attorney, John McHugh, for legal work that he performed between November 2004 and July 2010. (*See* Ex. 112, attached to Interim Fee Application, filed Dec. 13, 2010.)  Both parties filed briefs concerning Respondent's objections to this application. (*See* ECF Nos. 66, 69.) On June 13, 2011, I filed a Decision awarding a total of $87,049.45 for Petitioners' interim attorneys' fees and costs.  See *Hirmiz v. HHS*, 06-371V, 2011 WL 2680721 (Fed. Cl. Spec. Mstr. June 13, 2011.)

Thereafter, on January 9, 2012, Petitioners filed an expert report by James Oleske, M.D. (ECF No. 80-1.)  On May 9, 2012, Respondent filed an expert report of Stephen J. McGeady, M.D. (ECF No. 84-1.)  An additional report by Dr. Oleske, responsive to Dr. McGeady's report,

was filed on September 10, 2012. (ECF No. 90-1.)  On December 5, 2012, I conducted a second evidentiary hearing in New York, New York, to receive testimony from the experts in this case. (*See* Transcript of Proceedings (ECF No. 104).)  Drs. Oleske and McGeady were the only two witnesses to testify at that time. (*Id.*)

The parties then submitted post-hearing briefs.  Petitioners' post-hearing memorandum was filed on May 15, 2013 (ECF No. 109), and Respondent's memorandum on August 22, 2013 (ECF No. 112). Petitioners filed a reply brief on October 9, 2013. (ECF No. 115.)

On August 26, 2014, I filed a Decision concluding that Petitioners were not entitled to an award.  *Hirmiz v. HHS*, No. 06-371, 2014 WL 4638375 (Fed. Cl. Spec. Mstr. Aug. 26, 2014). Petitioners filed a Motion for Review of that decision on September 23, 2014. (*See* ECF No. 121.)  On December 4, 2014, my decision was affirmed by Judge Charles Lettow of this Court. *Hirmiz v. HHS*, 119 Fed. Cl. 209 (2014).  Upon further appeal, the U.S. Court of Appeals for the Federal Circuit also affirmed, without an opinion.  *Hirmiz v. HHS*, 618 Fed. Appx. 1033 (2015)(*per curiam*).  The U.S. Supreme Court denied *certiorari* on June 6, 2016. *Hirmiz v. Burwell*, 136 S. Ct. 2417 (2016).

Petitioners filed an application for final attorneys' fees and costs ("Application") on December 4, 2016, requesting a total of $228,708.00 for attorneys' fees, and $38,969.21 for attorneys' costs, in addition to the $87,049.45 received in interim fees and costs.  (ECF No. 133, p. 12.)  On December 16, 2016, Respondent filed a Response to Petitioner's application, recommending "that the Special Master exercise his discretion and determine a reasonable award for attorneys' fees and costs." (ECF No. 134, p. 3.)

III

**DETERMINATION OF ATTORNEYS' HOURLY RATES**

As noted in Petitioners' Application for attorney's fees and costs, Petitioners' attorney, John F. McHugh, has practiced before this court in Vaccine Act cases since at least 1999.  (ECF No. 133-1, p. 1)  Consequently, there is a long history concerning his requested hourly rates, and the rates that have been authorized by this court.  In some of these cases, Mr. McHugh has worked in collaboration with Mr. Gilbert Gaynor, who likewise has established a history regarding his hourly rates of pay.

### A.  *Relevant case law regarding attorneys' hourly rates*

#### 1.  *The Washington DC "forum rate" applies to Mr. McHugh's hourly rate.*

In *Rodriguez v. HHS*, 2009 WL 2568468, No. 06-559 (Fed. Cl. Spec. Mstr. July 27, 2009), Special Master Vowell rejected Mr. McHugh's requested New York City hourly rate of $450/hr., in favor of the Washington DC "forum rate," which she concluded was substantially lower.  (*Id*. at *16.)  Ultimately, Mr. McHugh received an award based on an hourly rate of $335/hr. for work performed in 2009, and lesser rates for work during previous years. (*Id*. at

*23.)  Mr. Gaynor's work in the same case was compensated at an hourly rate of $275/hour, for work performed in 2009. (*Id*. at *24.)

Mr. McHugh filed a motion for review of the *Rodriguez* decision on attorney's fees and costs in the U.S. Court of Federal Claims.  Upon review, Judge Sweeney affirmed the Special Master's decision regarding both Mr. McHugh's and Mr. Gaynor's hourly rates, based on application of the forum rates to the work they had performed.  *Rodriguez v. HHS*, 91 Fed. Cl. 453, 479 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011), *cert. denied*, 565 U.S. 1059 (2011).  Thus, regardless of Petitioners' requests for substantially greater "New York City" hourly rates for these two attorneys, this court ruled that during 2009, Mr. McHugh was entitled to $335/hour, while Mr. Gaynor was entitled to $275/hour, and that ruling was affirmed.

### 2.  Hourly rate determined previously in <u>this</u> case

By the time that the interim fees matter was ripe for decision in 2011, all the litigation regarding attorneys' fees in *Rodriguez* had concluded, and both parties in this case were "in agreement that a reasonable hourly rate for purposes of this interim award" for Mr. McHugh's work, was $350/hour.  *Hirmiz v. HHS*, 06-371V, 2011 WL 2680721 (Fed. Cl. Spec. Mstr. June 13, 2011) at *8.  Ultimately, I used that hourly rate to determine Petitioners' award for interim attorneys' fees.  (*Id*.)

### 3.  The <u>McCulloch</u> decision propounded a new "forum rate" scale.

In 2015, Special Master Gowen filed a fees decision that provided a detailed discussion of appropriate attorney hourly rates in the Program.  See *McCulloch v. HHS*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).  The special master devised a range of hourly rates for Vaccine Act attorneys with varying amounts of legal experience, if such counsel qualified for the Washington D.C. "forum rate." (*Id*. at *19.)

Other special masters have adopted *McCulloch's* range of hourly rates in a multitude of decisions. *E.g.*, *Ericzon v. HHS*, No. 10-103V, 2016 WL 447770, at *2-3 (Fed. Cl. Spec. Mstr. Dorsey Jan. 15, 2016); *Avchen v. HHS*, No. 14-279V, 2015 WL 9595415, at *2 (Fed. Cl. Spec. Mstr. Moran Dec. 4, 2015); *Houck v. HHS*, No. 11-509V, 2015 WL 9259889, at *1-2 (Fed. Cl. Spec. Mstr. Hamilton-Fieldman Nov. 25, 2015); *Tomlinson v. HHS*, No. 13-736V, 2015 WL 7068558, at *3 (Fed. Cl. Spec. Mstr. Millman Oct. 23, 2015); *Dixon v. HHS*, No. 13-022V, 2015 WL 8718278, at *2 (Fed. Cl. Spec. Mstr. Corcoran Nov. 23, 2015); see also *Mehner v. HHS*, No. 14-432V, 2016 WL 3944703, at *3 (Fed. Cl. Spec. Mstr. Roth June 24, 2016) (citing *McCulloch* as support for her awarded rate of fees).  I myself also found that Special Master Gowen's analysis of the range of attorneys' hourly rates in *McCullough* was persuasive, in *Manning v. HHS*, No. 14-753V, 2016 WL 4527582 (Fed. Cl. Spec. Mstr. July 29, 2016).

Among the many fees decisions in which special masters acknowledged the persuasiveness of the *McCulloch* analysis, two cases were later reviewed by judges of the U.S. Court of Federal Claims, and affirmed.  *See Garrison v. HHS*, No. 14-762V, 128 Fed. Cl. 99 (2017); *Raymo v. HHS*, No. 11-654V, 129 Fed. Cl. 691 (2016).

As stated in *McCulloch*, the following factors are paramount in deciding a reasonable forum hourly rate: experience in the Vaccine Program, overall legal experience, the

quality of work performed, and the reputation in the legal community and community at large. 2015 WL 5634323, at *17.  Special Master Gowen concluded that "the range of $350 to $425 an hour for attorneys with more than 20 years of experience is a reasonable forum rate." 2015 WL 5634323, at *19.  Applying that standard, the *McCulloch* decision in 2015 awarded hourly rates for two of the most experienced attorneys who practice in the Vaccine Program, of $415/hour and $400/hour, respectively, for work performed in 2014 and 2015.[3]  This determination is important because Mr. McHugh has a level of experience that is similar to the two lawyers in *McCulloch*.[4]

Thereafter, the *McCulloch* ranges of hourly rates for Vaccine Act attorneys were suggested by the Office of Special Masters in the "Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016."[5]

### 4.   Subsequent decisions concerning Mr. McHugh's hourly rates

In *Mostovoy v. HHS*, No. 02-10V, 2016 WL 720969, *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2016), Chief Special Master Dorsey reviewed the rates of pay awarded for Mr. McHugh's work in *Rodriguez*, and in the *Hirmiz* interim fees decision, and noted that Petitioners' requested hourly rates of pay for Mr. McHugh had been influenced by the *McCulloch* decision.  Based on that review, the Chief Special Master determined that Mr. McHugh was entitled to hourly rates of "$330.00 in 2009, $340.00 in 2011, $345.00 in 2012, $350.00 in 2013, and $400.00 in 2014." (*Id.*)

In *Bokmuller v. HHS*, 2016 WL 7011357, No. 08-573 (Fed. Cl. Spec. Mstr. Nov. 4, 2016) Petitioner requested that Mr. McHugh's hourly rates of pay should be compensated at $335/hour in 2010; $340/hour in 2011-12; $355/hour in 2014; and $364/hour in 2015. (*Id.* at *2.)  I determined that these were appropriate hourly rates of payment for the legal work performed by Mr. McHugh in the *Bokmuller* case. (*Id.*)

### B.   Analysis of appropriate hourly rates for Petitioners' counsel in this case

### 1.   Hourly rates of Mr. McHugh

Petitioners' earlier interim attorneys' fees award in this case encompassed the time period from 2004 through the end of June 2010.  (*See* Interim Fees Application, Ex. 112, filed Dec. 13, 2010.) The current fees Application covers legal work performed from mid-2010 through the end

---

[3] Petitioners' Application acknowledges the persuasive effect of the *McCulloch* analysis and, in particular, argues that the rate of compensation for attorneys with Mr. McHugh's level of experience would be $385-$430/hour in 2015-16. On that basis, Mr. McHugh claims a rate of $430/hour for all of 2015-16. (Application, ECF No. 133, pp. 9-10.)

[4] *McCulloch*, 2015 WL 5634323, *16,  states that "It is also very important to note that none of the attorneys in the 20+ years of experience category listed above, with the exception of Lisa Roquemore and John McHugh, have close to the same experience in the Vaccine Program as do the three senior partners at [Conway, Homer, Chin-Caplan]."

[5] *See* http://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2015-2016.pdf.

of 2016.[6]   Mr. McHugh's billing record seeks an hourly rate of $400/hour in 2010, $405 in 2011, $410 in 2012, $415 in 2013, $420 in 2014, $425 in 2015, and $430 in 2016.  (Application, ECF No. 133-2, filed Dec. 4, 2016.)  However, I do not find these rates to be reasonable.

I note that Petitioners' Application in the present case was filed ten months ***after*** the publication of the *Mostovoy* decision, on February 4, 2016, in which Chief Special Master applied the *McCulloch* hourly rate ranges specifically to Mr. McHugh's request for attorneys' fees. (*See* 2016 WL 720969.)   As described above in Sec. III(A)(4), the *Mostovoy* decision awarded significantly lower hourly rates of pay than the amounts requested here.  Likewise, in *Bokmuller*, I awarded attorneys' fees based on hourly rates that are significantly lower than those requested in the instant case.

I have carefully reviewed Petitioners' Application, along with the affidavits and billing records filed in support of that request.  (*See* ECF No. 133.)  There is no evidence in this filing suggesting that Mr. McHugh' level of experience and competence is somehow significantly greater than what has been previously recognized in *Mostovoy*.   I conclude that the appropriate hourly rate for an attorney with Mr. McHugh's legal experience, reputation, and quality of work is roughly consistent with the hourly rates awarded in *Mostovoy*.  For Mr. McHugh's rate of payment in this case, I award $335/hour in 2010; $340 in 2011; $345 in 2012; $350 in 2013; $375 in 2014; $400 in 2015; and $415 in 2016.  Petitioners' award will be based on these rates.

### 2.  *Hourly rates of Mr. Gaynor*

The affidavit and resume of Gilbert Gaynor describe his legal career, including significant experience as an appellate advocate.  (ECF Nos. 133-11 and 12.)  His affidavit mentions the appellate activities that he performed in *Rodriguez,* and in two other Vaccine Act cases.  (ECF No. 133-11.)   However, he has never been counsel of record in a case before this court, and his experience concerning the Vaccine Act has been confined to assisting or consulting on appeals of Vaccine Act decisions.   Petitioners' Application notes that Mr. Gaynor has "extensive overall legal experience in complex litigation, [and] particular experience in appellate matters (the focus of his services here)" in this *Hirmiz* case.  (ECF No. 133, p. 10.) Thus, Mr. Gaynor's participation in this litigation focused primarily on appeals.

Mr. Gaynor's billing record describes a total of 72.4 hours that he spent providing legal services in this case. (ECF No. 133-13.)  That total includes 4.6 hours in 2015, spent assisting preparations for Mr. McHugh's appearance before the Federal Circuit Court of Appeals, and the subsequent petition for rehearing. (ECF No. 133, p. 11; No. 133-13, p. 1.)  In contrast, I note that Mr. McHugh expended 172.8 hours in 2015, and almost all of this time involved drafting appellate briefs. (ECF No. 133-2, pp. 4-5.)  So it appears that Mr. Gaynor acted essentially as an appellate *consultant* in 2015.  However, in 2016, Mr. Gaynor expended 67.8 hours working on this case, with 56 hours spent on preparing the Supreme Court *certiorari* petition, and 11.8 hours spent preparing Petitioners' fees Application.  (ECF No. 133, p. 11; No. 133-13, p. 1.)  That Application requests $430/ hour for all of Mr. Gaynor's hours.

---

[6] Petitioners' Application for Award of Attorneys' Fees and Expenses was filed on December 4, 2016, identified as Exhibit 133.  Numerous supplementary exhibits were attached to the Application, identified as Exhibit 133-1 through Exhibit 133-14.

I note that in *Rodriguez,* Mr. Gaynor's hourly rate for services performed in 2009 was reduced to $275/hour, while Mr. McHugh received $335/hour.  2009 WL 2568468, at *24. Certainly, Mr. Gaynor's hourly rate should be increased periodically, but I see no evidence supporting an increase from $275/hour in 2009, to $430/hour by 2015.  When Special Master Vowell contemplated the fees requested for Mr. Gaynor in *Rodriguez*, she concluded that Mr. Gaynor's work was not "complex litigation."  (*Id.*)

> If Mr. McHugh chooses to contract out part of his workload on cases, he must consider the nature of the work to be performed before agreeing to pay an hourly rate that is higher than that awarded in any previous Program case for litigating a contested causation issue, much less a brief filed in support of a fees and costs application.  [The rate claimed for Mr. Gaynor] is not warranted by the nature of the work or its quality in this case.

*Id.*  I find that Special Master Vowell's observation in *Rodriguez* is consistent with my views concerning Mr. Gaynor in this case.  In this case, after considering Mr. Gaynor's special expertise, his limited experience with Vaccine Act litigation, his years of legal practice, and the type and quality of the work performed, I will award $385/hour for the work he performed in 2015-2016.


# IV

# NUMBER OF HOURS CLAIMED

Special masters have the authority to award "reasonable" attorneys' fees and litigation costs in Vaccine Act cases.  §300aa−15(e)(1).  If a petitioner receives an award of compensation, then the special master "shall" also award reasonable attorneys' fees and costs. *Id.*  However, when a petitioner is unsuccessful on the merits of the case, a special master **"may"** award attorneys' fees and costs if the petition was filed in good faith and with a reasonable basis.  *Id.* The case under consideration here falls in the latter category of cases, which were unsuccessful. An award for attorneys' fees and costs "may" be granted here, but only for billing that is "reasonable."

Here, I consider the number of hours claimed by Mr. McHugh and Mr. Gaynor, and the type of work performed.   Although the numbers of hours billed seem reasonable in some respects, there are two principal areas in which I find that hours were unreasonably billed, so that I find major reductions to be appropriate. These areas concern appellate litigation, and the number of hours spent on preparing the fees Application.

### A.  *Summary of total hours billed in this case*

Mr. McHugh received an "interim" award for attorneys' fees on June 13, 2011, for a total of 233.25 attorney hours that he spent on this case from 2004 through July of 2010.  After July of 2010, Mr. McHugh continued to bill *additional* hours on the litigation before the Office of Special Masters. This billing included 31.1 hours to prepare and defend Petitioners' Interim Fee

Application in 2010-2011; 73.1 hours in 2010-2012 to prepare for the entitlement hearing that occurred on December 5, 2012; and 63.7 hours during 2013 to engage in post-hearing litigation before the special master.

After Petitioners were found ineligible for a compensation award, Mr. McHugh billed for a total of 276.7 hours to litigate appeals concerning this same matter before the U.S. Court of Federal Claims and the Federal Circuit Court of Appeals (103.9 hours and 172.8 hours, respectively).  (It should be noted that the decision of the U.S. Court of Appeals, *Hirmiz v. HHS*, 618 Fed. Appx. 1033 (Mem)(Fed. Cir. Oct. 19, 2015), affirmed the lower court without a written opinion.)  Petitioners then sought a rehearing *en banc* before the Court of Appeals, which was denied (a total 8 hours billed by both counsel); and finally filed for *certiorari* before the U.S. Supreme Court (a total of 81.6 hours billed by both counsel).[7]

### B.  My ruling concerning the "reasonableness" of billed hours

#### 1.  Litigation before the Special Master (2011-2013)

As noted above, Mr. McHugh requested and received an "interim" award for attorneys' fees during 2011, for a total of 233.3 hours he spent litigating this matter between 2004 and mid-2010 in the Office of Special Masters.  *See Hirmiz*, 2011 WL 2680721, at *8.  However, that "interim" award did not include the additional hours billed to continue the litigation before the Office of Special Masters after mid-2010, for which fees are sought in this final application.

##### a.  Number of hours sought for non-fees issues

In reviewing the billing for 2010-2013, I note that Mr. McHugh often billed large blocks of hours, with scanty, uninformative descriptions.  This is regrettable.  I also note substantial numbers of hours spent on "review" of medical records, expert reports, transcripts, etc.  Nonetheless, I have concluded that the number of hours billed in 2010-2013, for litigation before the Office of Special Masters, was appropriate for all matters *except* litigating fees, which will be discussed below.  Therefore, the award for attorneys' fees will include compensation for: 3.1 hrs. in 2010; 21.5 hours in 2011; 48.5 hours in 2012; and 63.7 hours in 2013 (totaling 136.8 hours).

---

[7]The Application states that "Mr. McHugh's hours total **398.7**" for work he performed on this case between July 2010 and the end of 2016. (*See* ECF No. 133, p. 11.)  However, the paragraph summarizing Mr. McHugh's hours (at ECF No. 133, p. 11) contains numerous distortions and omissions.  The time he actually recorded in his billing record amounts to 472.5 hours. (*See* ECF No. 133-2.)  This is not readily apparent because the billing record conceals the total number of hours billed.  The billing record provides a total number of minutes worked for each year, then presumably divides by 60 (minutes), then multiplies the result by the hourly rate.  The final summary presented on page 10 of the billing record uses Mr. McHugh's preferred hourly rates to calculate the total dollar values for each year, without stating the number of hours worked.  The actual calculations are not provided, and there is never a clear statement of the number of hours worked.  This methodology is quite confusing and may give rise to errors.  I find it to be astounding and absurd for Mr. McHugh to utilize such a methodology.  The total number of hours that I report here (472.5), was obtained by re-calculating the number of hours from the data provided for each year, then adding the yearly totals together.  Alternatively, one may add the total numbers of minutes reported for each year, and then divide by 60.  **(Mr. McHugh should not submit fees applications in such a confusing fashion in future cases.)**

In so ruling, I am quite aware that when this total (136.8 hours) is added to the 233.3 hours already compensated, it reveals that Petitioners' counsel will be compensated for a total of 370.1 hours of attorney time, simply for arguing the merits of this case before the Office of Special Masters. This number of hours billed should be considered as reasonable *only* in the context of this *very unusual* case. In most Vaccine Act cases, only a much lower number of hours would be deemed reasonable.

### b.   Award reduced for preparing interim attorneys' fees and costs application

Mr. McHugh's billing record indicates that he required 15.5 hours to prepare the Interim Fee Application in December 2010, and then another 15.6 hours in 2011 to defend against Respondent's objections to the interim fee request, for a total of 31.1 hours of Mr. McHugh's time. (*See* ECF No. 133-2, p. 1).

The 15.5 hours spent preparing the interim fee application is reasonable, and will be compensated. However, Mr. McHugh spent 15.6 hours in 2011 to produce a document entitled "Petitioners' Reply to Respondent's Objections" (filed February 2, 2011). That document is little more than a declaration that Petitioner's counsel would temporarily accept $350/hour for his *interim* fees, while reserving an opportunity to request additional compensation per hour for those same hours, in his final fee request. Accordingly, I will allow an award for only five of the hours billed on producing this "defense" of the Application, which was performed in 2011.

### 2.   Motion for Review by U.S. Court of Federal Claims (in 2014)

On August 26, 2014, I filed my decision in this case, concluding that Petitioners' were not entitled to an award of compensation. Thereafter, beginning in August, Mr. McHugh billed for 103.9 hours in 2014 (including nine hours of travel time), to advocate a motion for review of the special master's decision before a judge of the U.S. Court of Federal Claims. (ECF No. 133-2, pp. 4-5.)

Much of the time billed in 2014 involved preparing Petitioners' "Motion for Review," which was filed on September 23, 2014. (ECF No. 121.) That document provided extensive briefing on the facts of the case, and the opinions of the experts. (*Id.*, *see* pp. 1-7, 8-12.) It also argued that the Vaccine Act's standard of review is unconstitutional, and that "*de novo*" review was the appropriate standard for the judge to apply to factual issues. (*Id.*, pp. 12-13.) Petitioners also contended that the special master's decision was "arbitrary and capricious," and that parts of it were contrary to law. (*Id.*, pp. 13-19.) However, Judge Lettow applied the statutory standard of review, concluded that the special master's decision was "neither arbitrary nor an abuse of discretion," and affirmed the special master's decision. *Hirmiz*, 119 Fed. Cl. 209, at 221.

### a.   Non-travel hours

I find reasonable the number of non-travel hours Mr. McHugh billed for the Motion for review (94.9 hours).

### b.   Compensation for travel hours

Mr. McHugh had been warned previously that he may only bill at half of his normal hourly rate for time expended on travel to/from court proceedings. *E.g., Rodriguez*, 2009 WL 2568468, at \*21. However, on November 13, 2014, Mr. McHugh billed his normal hourly rate for nine hours of driving, to and from the oral argument that took place in Washington DC. (ECF No. 133-2, p. 5.) There is no indication in the billing record as to who was driving, or whether Mr. McHugh performed any legal work during this travel. Accordingly, the number of compensable hours for this travel is reduced by half (from nine to 4.5 hours).

### 3. Appeal to U.S. Court of Appeals for the Federal Circuit (in 2015)

This section will consider whether there was a *reasonable basis* to continue further appeals of this case, after Judge Lettow of the U.S. Court of Federal Claims denied Petitioners' Motion for Review. Judge Lettow concluded that my determinations concerning the facts of the case and the credibility of witnesses were "neither arbitrary nor an abuse of discretion." 119 Fed. Cl. 209, 221. Thereafter, Petitioners' counsel appealed that decision to the U.S. Court of Appeals for the Federal Circuit, requesting *de novo* review.

#### a. History of the Vaccine Act's standard of review

The U.S. Court of Appeals for the Federal Circuit examined its own standard for reviewing Vaccine Act cases in *Munn v. HHS*, 970 F.2d 863 (Fed. Cir. 1992). The court concluded that "we may not disturb the judgment of the Claims Court[8] unless we find that judgment to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." *Id*. at 870. The court also stated that

> [c]learly it is not then the role of this court to reweigh the factual evidence or to assess whether the special master correctly evaluated the evidence. And of course we do not examine the probative value of the evidence or the credibility of the witnesses. These are all matters within the purview of the fact finder.

*Id.* at 871. This is recognized as a "deferential" standard of review, concerning factual issues.

In *Phillips v. HHS*, 988 F.2d 111, 112 (Fed. Cir. 1993)(Plager, J., concurring), the U.S. Court of Appeals for the Federal Circuit affirmed the decision by the U.S. Claims Court, and opined that a deferential standard of review applies to Vaccine Act case on appeal, as first enunciated in *Munn v. HHS*. The concurring opinion of Judge Plager states that "it is a waste of time and resources to attempt to have this court overturn the judgment of the Court of Federal Claims in a case such as this in which the only issue turns on fact-finding and credibility determinations." 988 F.2d 111, at 113. Based on these opinions, in my subsequent decision on attorneys' fees in that *Phillips* case, I denied an award of attorneys' fees for any of the litigation before the Federal Circuit.[9] *Phillips v. HHS*, No. 90-1249, 1994 WL 390154 (Fed. Cl. Spec. Mstr. July 13, 1994).

---

[8] The "Claims Court" referenced here is a previous name for the U.S. Court of Federal Clams.

[9] *Phillips*, 1994 WL 390154, at \*3. "The statute undoubtedly afforded petitioners the *legal* right to the appeals taken, [but] the statute affords petitioners *compensation* for the cost of such appeals only if it was objectively 'reasonable' to pursue the appeals. I conclude that it was not."

Meanwhile, the U.S. Court of Appeals for the Federal Circuit addressed this same matter again, and opined that

> The statute makes clear that, on review, the Court of Federal Claims is not to second guess the Special Masters' fact-intensive conclusions; the standard of review is uniquely deferential for what is essentially a judicial process. Our cases make clear that, on our review of the judgment of the Court of Federal Claims, we remain equally deferential. That level of deference is especially apt in a case in which the medical evidence of causation is in dispute.

*Hodges v. HHS,* 9 F.3d 958, 961 (Fed.Cir.1993)(internal citations omitted).  This standard of review was again reaffirmed by the U.S. Court of Appeals for the Federal Circuit, which observed that "'[w]e may not disturb the judgment of the [court] unless we find that judgment to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Perriera v. HHS* 33 F.3d 1375 (Fed. Cir. 1994), c*iting Munn v. HHS,* 970 F.2d 863, 870 (Fed.Cir.1992); *Phillips v. HHS,* 988 F.2d 111, 112 (Fed. Cir.1993).  The same court later clarified that they "do not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses—these are all matters within the purview of the fact finder." *Porter v. HHS,* 663 F.3d 1242, 1249 (Fed. Cir. 2011) (citing *Broekelschen v. HHS,* 618 F.3d 1339 at 1349 (Fed. Cir. 2010).  Thus, the standard of review for decisions by a special master in the Vaccine Program is well-defined, and long-established.

### 4. *Analysis of Petitioners' appellate litigation in this case*

The appeal in this case challenged the legality of the long-established standard of appellate review for cases under the Vaccine Act.  *See* Brief for Appellants, *Hirmiz v. HHS*, No. 2015-5043, 2015 WL 1801639, *17 (Fed. Cir. 2015).  Petitioners argued that "[a] standard of review which allows an Article I special master to deny compensation against the weight of evidence is a denial of due process of law." (*Id*.)  On that basis, Petitioners asked the court to re-examine the same facts and credibility determinations that had been reviewed by the lower court, to set aside the lower court's adverse decision, and to render a new decision based on the existing record. (*Id*. at *28.)

Petitioners re-stated that proposition in their subsequent petition for a writ of *certiorari* to the U.S. Supreme Court.  According to Petitioners, the "arbitrary and capricious" standard of review is not valid in Vaccine Act cases; rather, "*de novo* review by an Article III court should be required both for factual and for legal determinations of special masters."  Petition for Writ of Certiorari, *Hirmiz v. HHS*, No. 15-1249, 2016 WL 1388064 (U.S.) at 21.  *If* that standard were changed, as Petitioners proposed, *then*, and only then, would there be any use for Petitioners' extensive arguments at the appellate level concerning the factual findings and the credibility of witnesses as determined during previous levels of litigation.

Petitioners' appeal, if successful, would have granted to *every* petitioner the right to receive *de novo* determination by the Court of Appeals of *every* aspect, including factual findings, of every Vaccine Act decision by a special master.   Of course, Petitioners had a

*legal right* to challenge the constitutionality of the statutory standard of review.  However, the question presented here is whether the expense of mounting such an unlikely challenge should be paid by the Vaccine Program.   Was it a "reasonable" appeal?  I find that it was not.

After studying this legal challenge that Petitioners presented to the court of appeals, I find that the argument was legally meritless -- so legally dubious as to be, in essence, a *frivolous* argument.  It was not *reasonable* for Petitioners counsel to present this argument to the court of appeals panel, much less to raise it again in the request for rehearing *en banc* by the full court of appeals, much less to seek *certiorari* on the same legal issue.

Indeed, the frivolousness and unreasonable nature of this legal argument pursued by Petitioners' counsel may, quite possibly, be one reason why the court of appeals denied Petitioners' appeal *without writing any opinion*.

Additionally, I note that my examination of the appellate briefs showed that Petitioners' counsel expended a very large number of hours on re-stating the facts of the case, and summarizing some aspects of past testimony by the medical experts, in order to support Petitioners' new argument.   It was not reasonable, I conclude, for Petitioners' counsel to bill for highly repetitive presentations of the facts and expert opinions, after he had *already* billed hundreds of hours for briefing those same facts and expert opinions to both the Office of Special Masters and before the judge of this court in the Motion for Review.

In sum, I find that it was *not reasonable* for Mr. McHugh to make his appeals to the Federal Circuit, and beyond.  Additionally, many of the attorney hours spent on those appeals were spent on unnecessary, repetitive presentations concerning factual disputes and expert disagreements.  Thus, I award *no amounts* for the hours worked by *either* Attorney McHugh or Attorney Gaynor for the time period after the Motion for Review was denied by Judge Lettow, except for certain amounts of time spent preparing Petitioners' final fees application.

### *5.  Billing to prepare final attorneys' fees and costs application*

Petitioners' Application for attorneys' fees specifically states that Mr. Gaynor's "time includes 11.8 hours preparing this [fees] application." (ECF No. 133, p. 11.)  The appended time records also indicate that two hours and twenty minutes were spent by Mr. McHugh on the same task. (*See* ECF No. 133-2, p. 8.)  Thus, it appears that the task of preparing this final fees petition was largely delegated by Mr. McHugh to Mr. Gaynor, an attorney whose area of expertise is appellate litigation, not Vaccine Act litigation.   Yet this delegation seems odd, since much of the fees Application pertains to years (2011 through Nov. 2015) when Mr. Gaynor was not involved in the case.   It is clear that Mr. Gaynor would have to spend time to familiarize himself with the pertinent details involved in filing this fees application.

On December 2, 2016, Mr. Gaynor billed a large block of 6.3 hours to complete the following tasks:  "review [John McHugh's] timesheet, expense, notes on fee motion; begin research, analysis re: motion for fees; entitlement, reasonableness; McCulloch case, new fee schedule, procedural history; causation; etc." (ECF No. 133-13.)  These are all matters that were entirely familiar to Mr. McHugh, yet he chose to delegate the drafting of this Application to Mr.

Gaynor, who was far less experienced in these matters.  On December 3, 2016, Mr. Gaynor billed another block of 5.3 hours, for "drafting of application/memorandum; e-mail draft to JFM [John F. McHugh]; ph[one] conf[erence] w/JFM; drafting of Gaynor decl[aration]."(*Id.*)

It is commonly accepted practice in the Vaccine Program for the counsel of record to delegate certain tasks to other attorneys who are less experienced, or to paralegals.  However, such delegated tasks cannot be billed at the very highest hourly rates allowed by the Program. The entries quoted above seem to indicate that Mr. Gaynor expended 6.3 hours to familiarize himself with the task, then 5.3 hours to actually perform the task.  This is excessive.  Therefore, I will reduce Mr. Gaynor's claimed hours for the task by four hours.  (6.3 hrs. + 5.3 = 11.6, minus 4 hrs. = 7.6 hours total)   I will also compensate Mr. McHugh for the 2.3 hours that he apparently spent on the final fees petition as well.

# V

# COSTS

The petitioner's burden of proof to demonstrate "reasonableness" applies equally to *costs* as well as attorneys' fees. See *Perreira v. HHS,* 27 Fed. Cl. 29, 34 (1992), *aff'd,* 33 F.3d 1375 (Fed. Cir. 1994); *Ceballos v. HHS*, No. 99–97V, 2004 WL 784910, at *13 (Fed. Cl. Spec. Mstr. Mar. 25, 2004) ("It is petitioners' burden to substantiate costs expended with supporting documentation such as receipts, invoices, canceled checks, etc.").  Here, the final fees Application states that "Petitioners reasonably incurred $38,969.21 in costs in this litigation." (ECF No. 133, pp. 11-12.)  As an initial matter, I note that Mr. McHugh's record of attorneys' expenses actually reports total costs of $41,469.21 ($41,469.21 - $38,969.21 = $2,500). (*See* ECF No. 133-3.)  There is no explanation offered for this discrepancy.[10]

## A.  *Expenses related to Dr. Kinsbourne*

Petitioners' Application for Interim Fees previously requested compensation for work performed by Dr. Marcel Kinsborne. (Ex. 113, attached to Interim Fees Application, filed Dec. 13, 2010, p. 1)  However, I declined to award the reported costs at that time, stating that:

> I cannot effectively review the amounts claimed for Dr. Mark Geier and Dr. Marcel Kinsbourne, since petitioners' counsel has failed to file any *documentation* regarding those amounts.  (For expert costs, typically counsel file an *invoice* from the expert stating how many hours were expended, on what days on what specific tasks, and at what hourly rate.)  Accordingly I will not grant *at this time* [FN7] the amounts claimed for Drs. Geier and Kinsbourne.

*Hirmiz*, 2011 WL 2680721, at *8.  In the footnote regarding this paragraph, I clarified that expenses related to Dr. Kinsbourne "may be claimed in the final fees application, *with appropriate documentation.*" (*Id.*, n.7)  In effect, counsel was invited to resubmit his request.

---

[10] It seems likely that the $2,500 actually represents Dr. Kinsbourne's fees, which were added later.

In the final fees Application under consideration here, the Petitioners' counsel's record of expenses again includes a payment to Dr. Marcel Kinsbourne of $2,500 on November 13, 2012.[11] (ECF No. 133-3, p. 1.)  This may reflect the costs claimed previously, or new billing for some other work performed by Dr. Kinsbourne.  In either event, I observe that there is no invoice, no cancelled check, no documentation whatsoever provided regarding this expense, despite the specific instructions that I stated in my interim fees decision.  And counsel had been admonished previously about his failure to document expenses.  *See Rodriguez*, 2009 WL 2568468, at *21.[12]

This court's Guidelines for Practice states that petitioner should explain costs sufficiently to demonstrate their relation to the prosecution of the petition.  Here, it is impossible to determine precisely what services Dr. Kinsbourne rendered, when, or at what hourly rate.  (*See Guidelines for* Practice *Under the National Vaccine Injury Compensation Program* at 69 (Section X, Chapter 3, Part B(2)).  Accordingly, I will not include any compensation for this claimed cost, which is not supported by evidence.

### B.  *Expenses related to Dr. Oleske*

The Declaration of John McHugh states that "fees for Dr. Oleske's services was $23,000, of which $10,500 was paid through MedQuest and $12,500 was paid to Dr. Oleske directly." (ECF No. 133-1, ¶ 5.)  Mr. McHugh's record of expenses notes that a total of $10,500 was paid in three installments to MedQuest between March and June 2011. (ECF No. 133-3, p. 1.)

The invoice from MedQuest indicates that an initial retainer of $2,000 for Dr. James M. Oleske was paid on March 10, 2011.  On July 6, 2011, there is a notation of $8,500 paid on July 6, 2011 for "Addl. Retainer."  However, nowhere in this Application is there any record of how these "retainers" amounting to $10,500 were disbursed, what services were rendered, when, or any other details.  At the "requested" rate of $500 per hour, this amount would represent compensation for 21 hours of work performed by Dr. Oleske, but there is no description of those hours, or the work performed.  Thus, the total of $10,500 was recorded, as an expense of Petitioner's counsel, without adequate documentation.

Dr. Oleske actually provided a final invoice for his services, dated May 14, 2013. (ECF No. 133-6, p. 1.)  That invoice states "***Grand Total hours spent on case is 25 hours*** @ $500/hourly," which amounts to $12,500. (*Id.*, emphasis added.)[13]  The services rendered included "Review of medical records and all supplemental Reports/statement pertaining to [J.H.]… Review and Research of related literature… Preparation /Submission of Initial Expert Report total of 25 hours." (*Id.*)  A copy of a check for $12,500, made out to Dr. Oleske, is attached. (ECF No. 133-6, p. 2.) The invoice does *not* state that the alleged previous retainers (totaling $10,500) were applied to Dr. Oleske's charges for 25 "[g]rand total hours spent on case." (*Id.*, p. 1.)  Accordingly, the award will only include compensation of $12,500, for the 25

---

[11] No compensation is requested for services performed by Dr. Geier.
[12] Special Master Vowell's decision stated that, "**Mr. McHugh is on notice that invoices shall be submitted for any costs, either those claimed personally by petitioners or those he claims on behalf of his practice, in future fees and costs applications or he risks the denial of all costs claimed for which invoices are not provided**." *Rodriguez*, 2009 WL 2568468, at *21 (bold print in the original).
[13] In *Sexton v. HHS*, No. 99-453V, 2015 WL 7717209, *4 (Fed. Cl. Spec. Mstr. Nov. 9. 2015), Dr. Oleske received compensation at a rate of $500/hour.

hours actually billed by Dr. Oleske.[14]   In the absence of appropriate documentation, the award will not include compensation for $10,500 allegedly paid through MedQuest.

### C.  *Reasonable attorney's costs that will be compensated*

The total expenses claimed by Petitioners' counsel in the Application amount to $41,469. (ECF No. 133-3.)  The unreasonable costs described in subsections IV(A) and (B) will be subtracted from the award.  The award for costs will include the remaining expenses, since they are reasonable.  ($41,469 minus $10,500 = $30,969 minus $2,500 = $28,469)

### D.  *Petitioners' own litigation expenses.*

The personal expenses identified by Petitioners amount to $991.00. (ECF No. 133-14.) These costs appear reasonable, and they will be compensated.


# VI

# CALCULATION OF AWARD

Petitioners have requested $197,876 for Mr. McHugh's fees, $31,132 for Mr. Gaynor's fees, and $38,969 for expenses, for a total of $267,977.  (ECF No. 133, p. 11.)  The following calculations summarize the reductions to the final award.

● **Fees for Mr. McHugh:**

| Year | No. of Hours Claimed | No. of Hours Allowed | | Attorney's Hourly Rate | | Totals |
|---|---|---|---|---|---|---|
| 2010 | 18.6 | 18.6 | at | $335/hr. | = | $   6,231 |
| 2011 | 37.1 (- 10.6) = | 26.5 | at | 340/hr. | = | 9,010 |
| 2012 | 48.5 | 48.5 | at | 345/hr. | = | 16,733 |
| 2013 | 63.7 | 63.7 | at | 350/hr. | = | 22,295 |
| 2014 | 103.9 (- 4.5) = | 99.4 | at | 355/hr. | = | 35,287 |
| 2015 | 172.8 | 0 | at | 400/hr. | = | 0 |
| 2016 | 27.9 | 2.3 | at | 415/hr. | = | 955 |
| | | | | sub-total | | $ 90,511 |

---

[14] It should be noted that Dr. Oleske also billed an additional 9 hours, at $100 per hour, for secretarial services performed by Sondra Bell. (ECF No. 133-6, p. 3.)  This amount seems appropriate, and it will be compensated.

● **Fees for Mr. Gaynor:**

| | | | | | |
|---|---|---|---|---|---|
| 2015 | 4.6 | 0 | at $385/hr. | | 0 |
| 2016 | 72.4 | 7.6 | at $385/hr. | = | $  2,926 |
| | | | Total Attorneys' Fees | | **$  93,437** |

● **Attorneys' Costs:**

$41,469 claimed, minus (10,500 + 2,500 = $13,000)   =   Total Costs   **$  28,469**

Grand Total of Attorneys' Fees and Costs     **$ 121,906**

● **Petitioners' Own Litigation Expenses**                      **$      991**

## VI

## CONCLUSION

*A.  Good faith and reasonable basis*

        In a previous ruling that resolved attorney's fees and costs for the entitlement phase of this case, I have already determined that Petitioners brought this case in good faith and with a reasonable basis.  *Hirmiz v. HHS*, 2011 WL 2680721, at *7.  Since that ruling, Petitioners have sought appellate review three times, without success.

        I find that Petitioners' litigation of this case, through the resolution of Petitioners' Motion for Review before the U.S. Court of Federal Claims, was also in good faith, and supported by a reasonable basis.  However, upon careful review, I conclude that Petitioners did *not* have a reasonable basis to continue litigating this matter before the U.S. Court of Appeals for the Federal Circuit, or in their subsequent quest for *certiorari* before the U.S. Supreme Court.

*B.  Amount of the award*

        For the foregoing reasons, I award Petitioners $121,906.00 for attorneys' fees and costs, in the form of a check made payable jointly to Petitioners and Petitioners' counsel of record.  I also award Petitioners $991.00 for Petitioners' own litigation expenses, in the form of a check made payable to Petitioners.  The Clerk of this Court shall enter judgment accordingly.

**IT IS SO ORDERED.**

                                                                        /s/ George L. Hastings, Jr.
                                                                        George L. Hastings, Jr.
                                                                        Special Master