# In the United States Court of Federal Claims

No. 06-371V

(Filed: November 22, 2017 )

(Reissued: December 7, 2017)

| | | |
|---|---|---|
| **FRANCIA HIRMIZ and PETER HIRMIZ,** as best friends of their daughter, **J.H.,** | ) ) ) ) | Vaccine case; attorneys' fees and costs; reasonable basis for appeal |
| **Petitioner,** | ) ) | |
| v. | ) ) | |
| **SECRETARY OF HEALTH AND HUMAN SERVICES,** | ) ) ) | |
| **Respondent.** | ) ) | |

John F. McHugh, Law Office of John McHugh, New York, NY for petitioners.

Ryan D. Pyles, Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C., for respondent.  With him on the brief was Chad A. Readler, Acting Assistant Attorney General, Civil Division, and C. Salvatore D'Alessio, Acting Director, Torts Branch, Catharine E. Reeves, Deputy Director, Torts Branch, and Heather L. Pearlman, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**[1]

LETTOW, Judge.

In 2006, Francia and Peter Hirmiz filed a petition on behalf of their daughter, J.H., for compensation under the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, tit. III, §§ 301-323, 100 Stat. 3743, 3755 (1986) (currently codified, as amended, at 42 U.S.C. § 300aa-1 *et seq.*) (the "Vaccine Act").  J.H. suffered severe neurological degeneration after receiving two half-doses of influenza vaccine.  *See Hirmiz v. Secretary of Health & Human Servs.,* 119 Fed. Cl. 209, 211 (2014), *aff'd,* 618 Fed Appx. 1033 (Fed. Cir. 2015) (disposition by Fed. Cir. R. 36).  Extensive proceedings ensued before special masters, including two evidentiary hearings, and ultimately a decision was rendered denying J.H. entitlement to an award on the ground that causation had not been established by a preponderance of the evidence.  *See Hirmiz v. Secretary of Health & Human Servs.,* No. 06-371V, 2014 WL 4638375, at \*16 (Fed. Cl. Spec.

---

[1]In accord with the Rules of the Court of Federal Claims ("RCFC"), App. B, Rule 18(b), this opinion and order was initially filed under seal.  By rule, the parties were afforded fourteen days within which to propose redactions.

Mstr. Aug. 26, 2014) ("Entitlement Decision").  On review by this court, that determination was upheld, and an appeal to the United States Court of Appeals for the Federal Circuit was not successful.  *Hirmiz*, 119 Fed. Cl. 209, *aff'd*, 618 Fed. Appx. 1033.  Now, petitioners seek review of a subsequent decision by a special master denying attorneys' fees for the appeal taken to the Federal Circuit, for a petition for rehearing and rehearing en banc before the Federal Circuit, and for the submission of a petition for a writ of certiorari to the United States Supreme Court.[2]

Even where a petitioner is unsuccessful in obtaining compensation under the Vaccine Act, the special master nevertheless "may award an amount of compensation to cover petitioners' reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master . . . determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e); *see Simmons v. Secretary of Health & Human Servs.*, 875 F.3d 632 (Fed. Cir. 2017).  The special master awarded $121,906.00 for attorneys' fees and costs and $991.00 for petitioners' own litigation expenses, covering petitioners' counsel's work during the entitlement phase of the case and the motion for review before this court.  *See Hirmiz v. Secretary of Health & Human Servs.,* No. 06-371V, 2017 WL 4277433 (Fed. Cl. Spec. Mstr. Aug. 29, 2017) ("Attorneys' Fee Decision"), slip op. at 17.  The special master nonetheless declined to award fees for any of the legal work performed by petitioners' counsel in furtherance of the appeal to the Federal Circuit and thereafter because the special master found that the appeal was lacking a reasonable basis.  *Id.*, slip op. at 13-14.  Petitioners contest the special master's determination of the basis for their appeal and seek to have the special master's decision denying attorneys' fees for petitioners' appellate work overturned, but do not contest other components of the Attorneys' Fee Decision.  *See* Pet.'rs' Mot. for Review ("Pet'rs' Mot.") at 4, ECF No. 136.  The Secretary has responded, Resp't's Resp., ECF No. 140, petitioners have replied, Pet'rs' Reply, ECF No. 141, and a hearing on this motion was held on October 25, 2017.

## BACKGROUND

J.H.'s tragic and convoluted medical history was narrated at length in prior opinions.  *See, e.g., Hirmiz,* 119 Fed. Cl. at 211-15 (noting that J.H. has no confirmed diagnosis for her severe neurological disability notwithstanding numerous evaluations, including testing at Children's Memorial Hospital and the Mayo Clinic).  That history will not be recounted here.  In the course of this litigation, petitioners' counsel and retained experts undertook substantial work on petitioners' behalf.  At a midpoint in the proceedings before the special master, petitioners filed an application for an award of interim fees for legal work their counsel performed between November 2004 and July 2010.  *See* Attorneys' Fee Decision, slip op. at 3.  At that juncture, the special master awarded a total of $87,049.45 for interim attorneys' fees and costs, encompassing

---

[2]The Vaccine Act prohibits attorneys from charging any fee for services in connection with a vaccine injury petition.  *See Sebelius v. Cloer*, 589 U.S. 369, 373 (2013) (citing 42 U.S.C. § 300aa-15(e)(3)).  "Instead, the special master or court awards attorneys' fees and costs, and [such] award[s are] paid from the Federal Vaccine Trust Fund."  *Raymo v. Secretary of Health & Human Servs.*, 129 Fed. Cl. 691, 701 (2016) (citing 42 U.S.C. § 300aa-15(e)(1), (f)(4), (i)(2); *see also Rehn v. Secretary of Health & Human Servs.*, 126 Fed. Cl. 86, 91 (2016)).

time spent on the initial stages of the case and then on an evidentiary hearing that focused on J.H.'s symptoms and their onset. *Id.*

A further evidentiary hearing was held in December 2012 to receive testimony on causation from expert witnesses, and thereafter post-hearing briefs were received. Attorneys' Fee Decision, slip op. at 4. In August 2014, the special master issued a decision denying entitlement to an award of compensation. *See* Entitlement Decision.

Following the Entitlement Decision, petitioners brought a motion for review before this court and then an appeal to the Federal Circuit, both of which proved to be unsuccessful. In each, they argued that the special master's decision was arbitrary and capricious as to salient findings of fact. Specifically, petitioners argued that the special master's adverse findings on three issues central to the Entitlement Decision should be reversed: (1) recognizing that J.H. experienced severe neurological degeneration after receiving two half-doses of influenza vaccine, was she able to show a medical theory connecting the vaccination to the injury?; (2) was J.H. suffering from an underlying condition prior to her vaccination, resulting in a significant-aggravation claim rather than a straightforward causation claim?; and (3) was J.H. able to show a temporal relationship between the vaccination and the onset of her injuries? *See* Pet'rs' Appellate Brief, at 1-2, *Hirmiz v. Secretary of Health & Human Servs.*, No. 2015-5043, ECF. No. 18 ("Pet'rs' Appellate Br."). The Federal Circuit's affirmance of this court's decision was without opinion pursuant to Federal Circuit Rule 36. *See Hirmiz*, 618 Fed. Appx. 1033.

Beginning with their motion for review in this court and continuing in their appeal to the Federal Circuit, petitioners briefly alluded to a constitutional argument as to the proper standard of review to be applied in reviewing entitlement decisions under the Vaccine Act.[3] Petitioners'

---

[3]Underpinning petitioners' argument as to the standard of review was the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462 (2011). In that case, the Court heard a challenge to the constitutionality of a ruling by a United States Bankruptcy Court on a counterclaim arising under the common law of tort. In that context, the Court determined that Article III of the Constitution prohibited the exercise of the "judicial Power of the United States" by a tribunal that did not have the tenure and guarantees provided by Article III. 564 U.S. at 482-85 (relying on U.S. Const., Art. III, § 1). *Stern* held that allowing Congress to empower a non-Article III court to rule with dispositive force on "matter[s] which, from [their] nature, [are] the subject of a suit at the common law," would violate Article III of the Constitution. *Id*. at 484-85 (*citing Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 284 (1856). The Court distinguished matters in the class of "public rights" that included "only [those] matters arising between individuals and the [g]overnment in connection with the performance of the constitutional functions of the executive or legislative departments that historically could have been determined exclusively by those branches." *Id*. at 485 (citing *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 67-68 (1982) (internal quotations and ellipses omitted)). Based upon the reasoning of *Stern*, petitioners argued on petition for rehearing that a vaccine injury claim, like the tortious interference claim at issue in *Stern*, was not within the class of "public rights" over which Congress could constitutionally vest authority in an Article I tribunal like the Court of Federal Claims' Office of Special Masters. From that premise, petitioners argued that the provisions of the Vaccine Act that mandate a

appeal to the Federal Circuit advanced this argument in a cursory manner—without expressly stating the constitutional basis for their contention and notably without citing or discussing *Stern v. Marshall*. *See* Pet'r's Appellate Brief at 17-18. In petitioners' appellate reply brief, the argument was similarly not fleshed out. *See* Pet'rs' Resp. at 6-7, *Hirmiz v. Secretary of Health & Human Servs.*, No. 2015-5043, ECF No. 24.

Following the Federal Circuit's summary affirmance, petitioners filed a petition for rehearing by the panel and for rehearing by the Federal Circuit sitting en banc. *See* Pet'rs' Pet. for Reh'g & Reh'g en banc, *Hirmiz v. Secretary of Health & Human Servs.*, No. 2015-5043, Doc. No. 34. In this subsequent petition to the Federal Circuit and thereafter in their petition for writ of certiorari to the Supreme Court, petitioners no longer raised any factual arguments, but instead argued solely for a heightened standard of review premised on *Stern v. Marshall. Id.*

The Federal Circuit denied petitioners' motions for rehearing and for rehearing en banc, Order Den. Pet'rs' Mot. for Reh'g & Reh'g en banc, *Hirmiz v. Secretary of Health & Human Servs.*, No. 2015-5043, ECF. No. 36, and the Supreme Court denied petitioners' petition for a writ of certiorari, *see Hirmiz v. Secretary of Health & Human Servs.*, No. 15-1249, 2016 WL 1388064 (U.S.), *cert. den. sub nom. Hirmiz v. Burwell,* 136 S.Ct. 2417 (2016).

Following the appellate litigation, petitioners prepared and submitted an application for attorneys' fees under 42 U.S.C. § 300aa-15(e). *See* Fee Application, Exs. 2, 11, 13, ECF No. 133. Petitioners sought fees for legal work associated with their second evidentiary hearing, post-hearing briefing and proceedings before the special master on entitlement, the motion for review before this court, their unsuccessful appeal to the Federal Circuit, and the petitions for rehearing and for certiorari to the Supreme Court. *Id.*

The special master's Attorneys' Fee Decision calculated the hours petitioners' counsel billed for the appellate activity in this case to be 198.4 hours for Mr. McHugh and 65.4 hours for Mr. Gaynor. Attorneys' Fee Decision, slip op. at 16-17.[4] By the special master's calculation, the fee requested for this work totaled $104,923.00. *Id.*[5] Petitioners' Fee Application indicates that

---

deferential standard of review for findings of fact made by special masters violates Article III of the Constitution. *See, e.g., Hirmiz*, 2016 WL 1388064, at *4. A matching argument was addressed and rejected by the Federal Circuit in *Milik v. Secretary of Health & Human Servs.*, 822 F.3d 1367, 1375-79 (Fed. Cir. 2016).

[4] The Attorneys' Fee Decision makes no direct mention of the hours billed by Mr. Gaynor for petitioners' appellate activity, but the calculations it makes report 4.6 hours billed in 2015 and 72.4 hours billed in 2016. Attorneys' Fee Decision, slip op. at 17. As Mr. Gaynor's time sheet indicates, he billed 4.6 hours in 2015, and 67.8 hours in 2016 (56.0 hours on the litigation before the Supreme Court and 11.8 hours on the preparation of the Fee Application). Fee Application Exs. 11, 13. The special master appeared to double count the 4.6 hours spent on the Federal Circuit litigation in both 2015 and 2016.

[5] There is some discrepancy between the hours indicated in the special master's discussion of the Fee Application, the special master's tabulation of the amounts requested and to be

4

Mr. McHugh billed 166.35 hours in litigating the appeal before the Federal Circuit, 6.5 hours on the petitions for rehearing, and 25.58 hours for the petition to the Supreme Court.  Mr. Gaynor billed 3.1 hours for litigating the appeal before the Federal Circuit, 1.5 hours on the petitions for rehearing, and 56 hours for the petition to the Supreme Court.  *Id.*  Using the hours as reported in the Fee Application, and the hourly rates that the special master determined were reasonable in light of counsel's legal experience, the court notes that petitioners are requesting an award in the amount of $103,086.70.  *See* Attorneys' Fee Decision, slip op. at 5, 7-8, 16-17; Fee Application, Exs. 2, 11, 13.  The special master declined to award any attorneys' fees billed for the proceedings before the Federal Circuit and the Supreme Court, *see* Attorneys' Fee Decision, slip op. at 16-17, and it is this determination that petitioners contest at this juncture, Pet'rs' Mot. at 6.

## STANDARDS FOR DECISION

### A.  *Good Faith and Reasonable Basis*

Petitioners were ultimately unsuccessful on their claims, and the question at hand is whether petitioners' appeals were "brought in good faith and [upon] a reasonable basis" and thus support an award of fees and costs.  42 U.S.C. § 300aa-15(e).  "[G]ood faith and reasonable basis are two distinct facets" of this inquiry.  *Simmons*, 875 F.3d at 635 (quoting *Chuisano v. United States*, 116 Fed. Cl. 276, 289 (2014)).  Good faith is presumed in the absence of evidence of bad faith.  *See Grice v. Secretary of Health & Human Servs.,* 36 Fed. Cl. 114, 121 (1996).  In contrast, a reasonable basis is not presumed, but rather is typically viewed as "an objective standard determined by the totality of the circumstances."  *Chuisano*, 116 Fed. Cl. at 286 (internal quotations omitted); *see also McKellar v. Secretary of Health & Human Servs.*, 101 Fed. Cl. 297, 303 (2011).  In establishing that a reasonable basis exists, "[t]he burden is on the petitioner to affirmatively demonstrate a reasonable basis."  *McKellar*, 101 Fed. Cl. at 305.

The Vaccine Act "offers no further explanation or definition of what constitutes a 'reasonable basis,'" and "neither the Federal Circuit nor the Court of Federal Claims has had occasion to define the meaning of reasonable basis for purposes of fee awards under the Vaccine Act."  *Chuisano*, 116 Fed. Cl. at 285 (internal quotations and citations omitted).  "If a special

---

awarded, and the Fee Application itself.  The amounts entered on the Fee Application's supporting documentation, Fee Application, Exs. 2, 11, and 13, will be used in addressing the hours petitioners' counsel spent on the appellate litigation at issue here.  Where hours are reported in hour and minute format, they will be converted to decimal form by dividing the total number of minutes by 60.  Thus, for example, in Ex. 2, at 8, Mr. McHugh reports a total of 140 minutes spent on the creation of the final Fee Application; this converts to 2.33 hours of time.  Fee Application, Ex. 2, at 8.  Because of the differences between the billed time as reported in the Attorneys' Fee Decision and the Fee Application, the special master's calculation of the amounts requested differs from that of the court.  The court uses the hours as stated by petitioners' counsel, with the monetary amounts restated accordingly.

Petitioners do not contest the special master's determination as to petitioners' counsels' hourly rates, so the hourly rates as determined by the special master will be used for calculating the total amounts petitioners seek.  *See* Pet'rs' Mot. at 6; Attorneys' Fee Decision, slip op. at 7-8.

5

master determines that there is good faith and a reasonable basis for a claim, 'he or she *may* award the fees'[,] . . . [but] [i]t is nevertheless possible that, after making the required findings of good faith and reasonable basis, the special master may decline to award fees or costs." *Id.* at 284-85 (internal citations omitted) (emphasis in original).  Yet, no special master has found a reasonable basis and denied fees.  *See Silva v. Secretary of Health & Human Servs.*, 108 Fed. Cl. 401, 405 (2012) (*citing Silva v. Secretary of Health & Human Servs.,* 2012 WL 2890452, at *9 & n.17 (Fed. Cl. Spec. Mstr. 2012) ("Special masters have implemented Congress's goal of paying attorneys by always awarding attorneys' fees upon a finding of reasonable basis.  Although special masters have discretion not to award attorneys' fees to unsuccessful petitioners whose cases are supported by a reasonable basis, special masters have not exercised this discretion to deny attorneys' fees for cases supported by a reasonable basis.")).

The reasonable-basis analysis is not a one-time inquiry.  Accordingly, a petition that has a reasonable basis at the time of filing may lose reasonable basis during the pendency of the case.  *See Perreira v. Secretary of Health & Human Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994).  Several decisions have noted the possibility that appellate activity could be without reasonable basis even where the underlying petition or prior stages of the overall proceeding had a reasonable basis.  *See, e.g., Phillips v. Secretary of Health & Human Servs.*, 988 F.2d 111, 113 (Fed. Cir. 1993) (Plager, J., concurring) ("The appropriateness of an award of fees related to the initial proceedings before the special master is an issue quite separate from the appropriateness of fees attributable to an appeal to this court."); *Perreira v. Secretary of Health & Human Servs.*, 27 Fed. Cl. 29, 33 (1992) ("[T]he special master . . . determined that, when the petition was filed, it was brought in good faith and at that time there was a reasonable basis for a claim . . . [but that] reasonable basis for the claim no longer existed after the specific point in time petitioners' counsel knew, or should have known, their expert's unsupported medical theory was legally insufficient to establish causation in-fact."), *aff'd*, 33 F.3d 1375.

Even though continuing to litigate a vaccine petition after circumstances change or more information comes to light may not have a sustained reasonable basis, *see Perreira*, 27 Fed. Cl. at 33, a litigating position does not lack a reasonable basis simply because it is ultimately unavailing.  Correspondingly, litigating issues of fact that are subject to the deferential arbitrary and capricious standard on appeal is not *per se* without reasonable basis.  *See, e.g., Nuttall v. Secretary of Health & Human Servs.,* 2017 WL 3205815, at *3 (Fed. Cl. Spec. Mstr., 2017) ("Petitioner's appeal before the Federal Circuit mainly involved factual issues[,] . . . which were subject to an arbitrary and capricious standard of review[;] that alone does not render the appeal *per se* unreasonable.  The factual issues in this case . . . were *very* complex.") (emphasis in original).  Additionally, the fact that an appeal is denied without opinion pursuant to Federal Circuit Rule 36 does not necessarily mean that an appeal was without reasonable basis, let alone *per se* frivolous.  *See Davis v. Secretary of Health & Human Servs.,* 105 Fed. Cl. 627, 636-37 (2012) (reversing a special master's determination that a Rule 36 affirmance without opinion by the Federal Circuit necessarily meant that the appeal lacked a reasonable basis or was frivolous, pointing out that Federal Circuit precedent "cautions lower courts from reading too much into a Rule 36 decision[ and] reject[s] the . . . argument that an affirmance without opinion always mean[s] that the appeal was frivolous. . . .  [Rather,] the only reliable inference from a Rule 36 disposition [i]s that the trial court's explanation for its decision was clear and sound and no

6

useful purpose would [be] served by [the Federal Circuit] writing an opinion.") (internal quotations and citations omitted).

### B. Standard of Review of Fee Decisions

"Notably, a special master's decision whether to award or deny attorneys' fees and costs to unsuccessful petitioners is discretionary and, thus, reviewed under an abuse of discretion standard." *Chuisano*, 116 Fed. Cl. at 283 (*citing Saxton v. Secretary of Health & Human Servs.,* 3 F.3d 1517, 1520 (Fed. Cir. 1993)) (additional citations omitted); *accord, Silva*, 108 Fed. Cl. at 405 ("A special master's determination of attorneys' fees and costs is entitled to deference. So long as the special master has 'considered the relevant evidence of record, drawn plausible inferences, and stated a rational basis for the decision, reversible error is extremely difficult to establish.") (internal quotations, brackets, and citations omitted). An abuse of discretion exists where "(1) the . . . decision is: clearly unreasonable, arbitrary, or fanciful; (2) . . . based on an erroneous conclusion of the law; (3) . . . clearly erroneous; or (4) the record contains no evidence on which the [special master] rationally could have based [his] decision." *Simmons*, 875 F.3d at 635 (quoting *Hendler v. United States,* 952 F.2d 1364, 80 (Fed. Cir. 1991)).

### ANALYSIS

Petitioners contest the special master's rejection of attorneys' fees for the hours petitioners' counsel billed for work before the Federal Circuit and the Supreme Court, arguing that the special master abused his discretion because the chief reason given for why their appeal lacked reasonable basis—that the Federal Circuit affirmed without opinion pursuant to Federal Circuit Rule 36—was insufficient support for the conclusion that no reasonable basis existed. *See* Pet'rs' Mot. at 12; Attorneys' Fee Decision, slip op. at 13. Respondent counters that the special master did not abuse his discretion because he "rationally explained why he found petitioners' appellate activities to be unreasonable." Resp't's Resp. at 5. As respondent frames it, in their initial appeal, "[p]etitioners . . . proceeded to reargue the facts of the case . . . [and] impl[ied] that the relief they sought was to have the Federal Circuit review their claim *de novo*," a position that respondent believes "patently lack[s] any merit." *Id.* at 6.

The resolution of these countervailing contentions turns, then, upon consideration of what arguments petitioners raised and when and whether the special master abused his discretion in finding that the entire body of appellate activity was without reasonable basis. As will appear, because the appeal to the Federal Circuit entailed different arguments from those presented in the petitions for rehearing and rehearing en banc and the petition for certiorari, the two phases will be considered separately.

### A. Petitioners' Appeal to the Federal Circuit

In their appeal to the Federal Circuit, petitioners focused on arguments that the special master acted arbitrarily and capriciously in making crucial findings of fact, and they alluded only briefly to the standard of review. *See generally* Pet'rs' Appellate Brief. In connection with his focus on the court of appeals' affirmance without opinion under Federal Circuit Rule 36, the special master commented only briefly on the factual arguments petitioners advanced in their

7

appeal, stating that "[p]etitioners' counsel expended a very large number of hours on re-stating the facts of the case, and summarizing some aspects of past testimony by the medical experts." Attorneys' Fee Decision, slip op. at 12-13. The special master also concluded that the appeal was without reasonable basis because petitioners' position regarding the standard of review ran contrary to the "long-established" standard in Vaccine Act cases. As the special master put it, "if that standard were changed . . . . [it] would have granted to every petitioner the right to receive *de novo* determination by the Court of Appeals of every aspect, including factual findings, of every Vaccine Act decision by a special master." *Id.* (internal emphasis omitted). On this basis, the special master concluded that the petitioners' appeal "was legally meritless—so legally dubious as to be, in essence, a *frivolous* argument." *Id.* at 13 (emphasis in original).

Taken at face value, the Attorneys' Fee Decision places great emphasis on petitioners' cursory questioning of the standard of review applicable to the appeal, largely passing over petitioners' primary focus in the appeal on the complex issues of causation stemming from J.H.'s severe neurological degeneration after she received of influenza vaccine. J.H.'s condition, despite extensive testing and attempts at diagnosis at some of the foremost medical institutions in the United States, has no known etiology. *See Hirmiz,* 119 Fed. Cl. at 211-15.

A challenge to findings of fact on appeal, even when subject to the deferential arbitrary and capricious standard of review, can still have a reasonable basis, especially where the facts at hand are "*very* complex." *Nuttall*, 2017 WL 3205815, at *3 (emphasis in original). By giving short shrift to the primary focus of the petitioners' appeal to the Federal Circuit on the complex factual bases for the special master's Entitlement Decision, and instead finding their appeal unreasonable and even frivolous because of a legal argument that they alluded to, but did not elaborate, the special master's decision is not well supported.

Additionally, the special master's reliance on the Federal Circuit's summary affirmance under Federal Circuit Rule 36, *see* Attorneys' Fee Decision, slip op. at 13, did not have the significance that the special master attached to it. As this court observed in *Davis*, 105 Fed. Cl. at 636-37, the only reliable inference to be drawn from such a disposition is that "the trial court's explanation for its decision was clear and sound and no useful purpose would have been served" by an appellate decision. If the Federal Circuit had found the appeal frivolous, as the special master seemed to believe, the Federal Circuit could have said as much, yet no such indication was given. *See Hirmiz,* 618 Fed. Appx. 1033. In short, the weight the special master gave to the Federal Circuit's summary affirmance is misplaced for the reasons given in *Davis*.

Overall, because the special master's reasoning as to why the appeal lacked reasonable basis was inadequate to support his conclusion, the special master's decision was unreasonable and arbitrary. The court concludes that petitioners' appeal to the Federal Circuit had a reasonable basis and was filed in good faith, and thus that petitioners are entitled to receive an award of attorneys' fees for the legal work performed in furtherance of that appeal.

### B. *Petitioners' Petitions for Rehearing and Petition for Certiorari*

Contrastingly, petitioners' submissions to the Federal Circuit in seeking rehearing and rehearing en banc and to the Supreme Court in seeking certiorari abjured the factual arguments they had previously made for overturning the Entitlement Decision, and instead rested wholly on

the contention that a stringent standard of review should be applied based on *Stern v. Marshall*. That argument had been made by petitioners in their appeal only in the most cursory fashion, without citing *Stern*. That circumstance compromised any likelihood of success for the petition for rehearing. The Federal Circuit has emphasized that "[o]ur law is well established that arguments not raised in the opening brief are waived." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006); *see also Anderson v. City of Boston,* 375 F.3d 71, 91 (1st Cir. 2004) ("'When a party includes no developed argumentation on a point . . . we treat the argument as waived.'"); *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("'It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'"). In short, petitioners waived their argument as to the standard of review by only "advert[ing] to [it] in a perfunctory manner" and not appropriately briefing the issue in their appeal. Even though petitioners' argument for a stringent standard of review based on *Stern* was not itself frivolous, *see Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 54 (Fed. Cir. 1983) ("[A]ppeals having a small chance of success are not for that reason alone frivolous[; o]ne may legitimately argue, for example, that even overwhelming contrary precedent should be overruled or distinguished."), petitioners had not presented that argument in a timely manner.[6]

Because petitioners waived the right to contest the standard of review before the Federal Circuit by not adequately raising it in their appeal, it was unreasonable for them to seek rehearing and rehearing en banc on that issue. *Cf.* Fed. Cir. R. 40(a)(4) ("The preferred

---

[6]The special master considered the argument about the standard of review to be so meritless that he deemed it to be frivolous. Attorneys' Fee Decision, slip op. at 13. As noted earlier, *see supra*, at 3-4 n.3, a more developed version of this argument was presented to the Federal Circuit in *Milik*. In that case, the Federal Circuit carefully weighed the merits of the argument that the Constitution requires *de novo* review in an Article III court for claims covered by the Vaccine Act, before ultimately concluding that this argument was unavailing. *See Milik*, 822 F.3d at 1374-80. The Federal Circuit analyzed the legislative history of the Vaccine Act, relevant Supreme Court precedent, and the separation of powers and preemption doctrines. *Id.* Further, after the Federal Circuit panel denied the petitioners' appeal, the Miliks presented a petition for rehearing and rehearing en banc. *See* Pet'n for Reh'g and Reh'g en banc, *Milik v. Secretary of Health & Human Servs.,* App. No. 15-5109, Doc. No. 30 (Fed. Cir. June 30, 2016). In considering this petition, the Federal Circuit called for a response from the Secretary of Health and Human Services, a discretionary request that almost certainly would not happen if the court thought the question presented in the Miliks' petition to be frivolous. *See* Invitation for Resp., *Milik*, App. No. 15-5109, Doc. No. 32 (July 18, 2016); *cf.* Fed. R. App. P. 35(e) ("No response may be filed to a petition for an en banc consideration unless the court orders a response."); Fed. Cir. R. 35(e)(4) ("*If* the court requests a response . . .") (emphasis added). Likewise, when the petitioners submitted a petition for a writ of certiorari to the Supreme Court, the Secretary initially waived a response, but the Court requested a response. *See* Brief for the Respondent, *Milik v. Price*, 2017 WL 1488629 (U.S.). The extensive consideration that the Federal Circuit and the Supreme Court gave to petitioners' constitutional arguments in *Milik* undermines the special master's conclusion here that the argument over the applicable standard of review was wholly without merit.

contents . . . [of] a petition for panel rehearing [include:] . . . the points of law or fact overlooked or misapprehended by the court."); Fed. Cir. R. 28(a) ("Briefs . . . must contain[:] . . . the statement of the issues; . . . [and] the argument, including statement of the standard of review."). Accordingly, because the petitions for rehearing and rehearing en banc raised only issues that had been waived, those petitions lacked reasonable basis. Petitioners' petition for a writ of certiorari suffers from the same defect. Thus, petitioners' request for an award of attorneys' fees for the legal work performed in petitioning for rehearing and for certiorari must be denied.

*C. Dispositive Action on the Fee Application*

When a special master has abused the discretion afforded by the Vaccine Act, this court may, on petition for review, either "set aside any findings of fact or conclusion of law of the special master found to be . . . an abuse of discretion . . . and issue its own findings of fact or conclusions of law, or . . . remand the petition to the special master for further action." 42 U.S.C. § 300aa-12(e)(2)(B)-(C); *see also Althen v. Secretary of Health & Human Serv's.,* 418 F.3d 1274, 1281 (Fed. Cir. 2005) ("[B]ecause the special master's decision was [set aside under § 300aa-12(e)(2)(B)], the [Court of Federal Claims] was permitted to review the evidence anew and come to its own conclusion."); *Doe v. Secretary of Health & Human Serv's.*, 89 Fed. Cl. 661, 667 (2009) (citing "significant delays" and "lengthy and contentious proceedings" in deciding to set aside an award of interim attorneys' fees and issuing its own award rather than remanding for further consideration by the special master). The court has considered whether it is prudent to issue its own findings of fact and conclusions of law necessary to resolve this case rather than remanding for further proceedings. Ordinarily, the court would remand, but special circumstances apply here which indicate that the court should itself act.

This case has been pending a long time. The Hirmiz' petition for compensation was filed on May 8, 2006, and it is only now reaching a conclusion—over a decade later. See Pet'rs' Pet., 06-371V, ECF No. 1 (May 8, 2006). Over its pendency, petitioners' case has thus far been heard by two special masters—the special master who conducted the initial evidentiary hearing and the special master who conducted the second evidentiary hearing and issued the Entitlement Decision. Both have now retired from the Office of Special Masters. If this court opted to remand this case for further consideration, it would have to be reassigned to a third special master, and the parties would be required to re-litigate salient issues in this case to acquaint the special master with the issues presented by the petitioners' Fee Application. Rather than require the parties to spend more time and money re-litigating key portions of the case, and because the issue that petitioners request this to court decide is well-defined, "the court is well[-]situated to spare both parties further litigation by making its own finding." *Davis*, 105 Fed. Cl. at 637; *see also Phillips v. General Servs. Admin.*, 924 F.2d 1577, 1581 (Fed. Cir. 1991) (commenting that the court was in "a better position . . . to determine the amount of fees and expenses" than the Merit Systems Protection Board, in connection with a review of a decision of that Board). It is significant that the court is already well acquainted with the case, having considered it in detail on a motion for review of the special master's Entitlement Decision. *See generally Hirmiz*, 119 Fed. Cl. 209.

Additionally, the record in this case enables this court to resolve the issue presented by petitioners' instant motion for review. *See Althen*, 418 F.3d at 1281 ("So long as the record

contained sufficient evidence upon which to base predicate findings of fact and the ultimate conclusion of [the issue on which the special master was overruled], the [Court of Federal Claims] was not required to remand."). The facts at issue and the arguments raised in petitioners' appeals have been well fleshed out and the parties have extensively briefed and documented the issue of fees. Consequently, this court is well-situated to rule on the issue of whether petitioners' appeals had a reasonable basis.

In sum, regarding petitioners' appeal to the Federal Circuit, the court finds that the complex factual issues of causation that petitioners raised gave their appeal reasonable basis, and the court concludes that petitioners are entitled to an award of attorneys' fees for the work spent litigating the appeal. As the Fee Application indicates, Mr. McHugh billed 166.35 hours and Mr. Gaynor spent 3.1 hours on the appeal. Fee Application, Exs. 2, 11, 13. The special master determined that the proper rate for Mr. McHugh's time billed during 2015 (when the appeal to the Federal Circuit was litigated) was $400 per hour, while the proper rate for Mr. Gaynor's time was $385. Attorneys' Fee Decision at 16-17. At these rates, petitioners are awarded $66,540 for Mr. McHugh's legal work, and $1,193.50 for Mr. Gaynor's legal work—a total of $67,733.50.

In contrast, the court finds that petitioners' petitions for rehearing and for a writ of certiorari were without reasonable basis because they abjured factual arguments and focused only on arguing for a stringent standard of review, an argument that, as considered above, was waived. Thus, the court finds that petitioners are not entitled to an award of attorneys' fees for any hours billed on the petitions for rehearing and for certiorari.

## CONCLUSION

For the reasons stated, the motion for review of the special master's Attorneys' Fee Decision is GRANTED IN PART and DENIED IN PART. The Attorneys' Fee Decision is in part REVERSED and in part AFFIRMED. Petitioners shall receive attorneys' fees for the legal work performed on their appeal to the Federal Circuit, in the amount of $67,733.50, but not for the work on the petitions for rehearing and for certiorari. The amount of $67,733.50 shall be added to the award by the special master of $121,906.00 for attorneys' fees and costs, and $991.00 for petitioners' own litigation expense—for an overall total of $190,630.50. The clerk shall enter judgment accordingly.

It is so ORDERED.

s/ Charles F. Lettow  
Charles F. Lettow  
Judge